IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE: )
)
HARRAH LAND FC, LLC, ) Case No. 24-80401-T
) Chapter 11, Sub V
)
)
)
Debtor-in-Possession. )

## MOTION FOR EMERGENCY INTERIM USE OF CASH COLLATERAL AND REQUEST FOR EXPEDITED HEARING WITH BRIEF IN SUPPORT

Harrah Land FC, LLC, (**"Harrah Land"**), the above-captioned Debtor-in-Possession, moves this Court for authority to use cash collateral pursuant to 11 U.S.C. Section 363(c)(2) and F.R.Bankr.P. 4001(b)(2). Harrah Land has an urgent need for the use of cash collateral, and requests this Court set an expedited hearing to consider this Motion.

### Background Information

1. Harrah Land filed its voluntary petition for relief under Chapter 11, Sub V of Title 11 of the United States Code on May 21, 2024; and since such date has continued in possession of its property and operation of its business as Debtor-in-Possession under 11 U.S.C. Sections 1107 and 1108.

2. A related case, Park 151 CS, LLC (**"Park 151"**) also filed a voluntary petition for relief under Chapter 11, Sub V of Title 11 of the United States Code on May 21, 2024, Case No. 24-80403-T. Park 151 owns two commercial office buildings at 151st Street and Elwood Avenue, in Glenpool, Oklahoma.

3. Harrah Land and Park 151 have common ownership, and have the same secured creditor, Tinker Federal Credit Union (**"TFCU"**).

1

Case 24-80401    Doc 5    Filed 05/21/24    Entered 05/21/24 15:30:02    Desc Main
Document    Page 1 of 12

4. TFCU commenced foreclosures of its mortgages against Harrah Land and Park 151.

5. Harrah Land owns 13 houses in Seminole County, Oklahoma which are substantially completed. Of these 13 houses, TFCU has separate mortgages on 10 and Valor Bank has separate mortgages on three.

6. Harrah Land estimates the amount owed to TFCU on the 10 houses in which it has mortgages is $1,383,806.25.

7. Harrah Land estimates the amount owed to Valor Bank on the 3 houses in which it as mortgages is $442,985.81.

8. Three creditors have filed liens against the 13 houses:

   a. Pioneer Supply has filed a lien for $300,000, but this lien is also secured by other property owned by Harrah Land. The amount of Pioneer's lien per house is estimated at $9,500.

   b. MillCreek Lumber has filed a lien for $80,000. MillCreek Lumber's lien ranges from $2,000 to $5,000 per house.

   c. Rempel Rock-N-Ready Mix (**"Rempel"**) has filed a lien for $200,000. Harrah Land disputes the validity of this lien because the obligation is not owed by Harrah Land, and the lien also is secured by property owned by a third party.

9. TFCU also has a mortgage on 16 acres of undeveloped land owned by Harrah Land in Seminole County, Oklahoma.

10. Valor Bank also has mortgages on 46 residential lots owned by Harrah Land in Seminole County, Oklahoma.

11. Harrah Land averages the sale of three houses per month ranging from a contract price of $215,000 to $240,000 for each home. Although it is the ordinary course of Harrah Land's business to sell houses, secured creditors have requested payoffs exceeding the amount owed as to

2

each house. The proceeds from the sale of each house could be viewed as the cash collateral of the secured creditors.

12. Cash collateral is defined in 11 U.S.C. Section 363(a). Although the TFCU and Valor Bank mortgages contain assignment of rents clauses, the sale of the house does not constitute rent or lease payments. However, Harrah Land desires to continue the payment of the proceeds from the sale of the houses to the secured creditors and other sale costs. Harrah Land has a need to use cash collateral on an expedited interim basis and on a permanent basis to preserve and maintain the property so that sales in the ordinary course of its business may continue. As adequate protection, to the extent TFCU, Valor Bank, MillCreek Lumber and Pioneer Supply have liens, those liens attributable to the house being sold shall be paid at closing. Since Rempel's lien is disputed, its lien shall attach to the net sale proceeds. 11 U.S.C. Section 363(c)(2) and F.R.Bankr.P. 4001(b)(B).

13. Harrah Land estimates it will sell three houses in the next 30 days generating about $698,700 in revenue with net revenues of $49,985. Attached as **Exhibit "A"** is a budget of the income and expenses necessary for the next 30 days. The expenses in Exhibit A are generally self-explanatory except for the Construction Costs.

14. The Construction Costs of $578,000 consist of:

   a. $1,500 to $17,000 left on each house. Three of the houses only need appliances which would cost $1,500. Six of the houses need appliances and outside air conditioning units which would cost $3,400. Four of the houses need sod, fixtures, appliances and carpet which would cost $17,000

   b. $9,500 to satisfy the Pioneer Supply lien and $2,000 to $5,000 to satisfy the MillCreek Lumber lien.

   c. The balance of the Construction Costs represents the payoff of the mortgage for Valor Bank and TFCU on each respective house.

15. Given the urgent need for the immediate use of cash collateral, Harrah Land requests the Court enter an Interim Cash Collateral Order or set this matter for an expedited hearing.

## Request for Use of Cash Collateral

16. Harrah Land seeks use of cash collateral pursuant to 11 U.S.C. Section 363(c)(2) and F.R.Bankr.P. 4001(b).

17. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. Sections 157 and 1334. Venue is proper pursuant to 28 U.S.C. Sections 1408 and 1409. This Motion concerns the administration of Harrah Land's bankruptcy estate is a core proceeding under 28 U.S.C. Sections 157(b)(2)(A) and (M).

18. Under 11 U.S.C. Section 362(c)(2), Harrah Land may not use cash collateral unless TFCU and Valor Bank consent or this Court, after notice and hearing, authorizes Harrah Land's use of cash collateral. Harrah Land requires funds to pay for its monthly operations. Equal as important is the satisfaction of the secured claims encumbering each house. Use of cash collateral will allow the continuation of the present operations and to maintain and preserve the bankruptcy estate. Harrah Land has no employees. Without authorization to use cash collateral, Harrah Land's continued sale of houses could cease because the inability to obtain mortgage and lien releases would prevent the transfer of the houses to third parties free and clear of liens causing Harrah Land business operations to cease – triggering immediate and irreparable harm to Harrah Land, its creditors and the bankruptcy estate. It is essential that Harrah Land be allowed continued use of cash collateral or it will not be able to sell houses. Without continued sale of houses, Harrah Land cannot continue its operations and service its secured debt to TFCU, Valor Bank and the lien creditors; and generate funds to finish other houses and pay unsecured creditors. The Affidavit of T.J. Remy, the managing member of Harrah Land, supporting this Motion is attached as **Exhibit "B"**.

4

19. Under F.R.Bankr.P. 4001(b)(2), this Court may authorize the use of cash collateral on a preliminary basis only in an amount to avoid immediate and irreparable harm to the bankruptcy estate.

20. Harrah Land requests a variance of fifteen percent (15%) as to the whole budget.

21. The form of the Interim Cash Collateral Order is attached as **Exhibit "C"**.

**WHEREFORE**, Harrah Land prays this Court enter an Interim Cash Collateral Order allowing Harrah Land's use of cash collateral for 30 days, or in the alternative, set an expedited hearing to consider Harrah Land's temporary use of cash collateral.

*Respectfully submitted this 21st day of May, 2024.*

RIGGS, ABNEY, NEAL, TURPEN, ORBISON & LEWIS

Scott P. Kirtley, OBA #11388
502 W. 6th Street
Tulsa, Oklahoma 74119
(918) 587-3161
(918) 587-9708 (fax)
skirtley@riggsabney.com

*Attorneys for Harrah Land FC, LLC*

# Harrah Land FC, LLC
## Profit & Loss
### 30 day Budget

4:48 PM
04/23/2024

| | 30 day Budget |
|---|---|
| **Ordinary Income/Expense** | |
|   **Income** | |
|     Construction Income | 0.00 |
|     Residential Sales | 698,700.00 |
|   **Total Income** | 698,700.00 |
|   **Cost of Goods Sold** | |
|     Closing Costs | 30,000.00 |
|     Commissions Paid | 34,935.00 |
|     Construction Costs - Homes | 578,000.00 |
|   **Total COGS** | 642,935.00 |
| **Gross Profit** | 55,765.00 |
|   **Expense** | |
|     Automobile Expense | |
|       Repairs and Maint | 500.00 |
|     Total Automobile Expense | 500.00 |
|     Insurance Expense | |
|       Insurance Exp GL | 865.00 |
|       Insurance Exp Rental Equipment | 765.00 |
|     Total Insurance Expense | 1,630.00 |
|     Late & Misc Fees | 350.00 |
|     Professional Fees | 500.00 |
|     Utilities | 2,800.00 |
|   **Total Expense** | 5,780.00 |
| **Net Ordinary Income** | 49,985.00 |
| **Other Income/Expense** | |
|   Other Income | |
|     Other income | 0.00 |
|     Proceeds from Sale of Asset | 0.00 |
|   Total Other Income | 0.00 |
|   Other Expense | |
|     Ask My Accountant | 0.00 |
|   Total Other Expense | 0.00 |
| **Net Other Income** | 0.00 |
| **Net Income** | **49,985.00** |


EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE: )
)
HARRAH LAND FC, LLC, ) Case No. 24-80401
) Chapter 11, Sub V
)
)
Debtor-in-Possession. )

## AFFIDAVIT IN SUPPORT OF
## MOTION FOR EMERGENCY USE OF CASH COLLATERAL

STATE OF OKLAHOMA )
) ss
COUNTY OF TULSA )

I, T.J. Remy, being of lawful age first duly sworn, hereby deposes and states as follows:

1. I am making this sworn declaration on the basis of direct personal knowledge, and submit this Affidavit in support of the Motion for Emergency Interim Use of Cash Collateral and Request for Expedited Hearing with Brief in Support (the **"Motion"**).

2. I am the Managing Member of Harrah Land FC, LLC (**"Harrah Land"**), and I own fifty percent (50%) of Harrah Land.

3. On April 25, 2024, as the Managing Member of Harrah Land, I authorized the filing of a voluntary petition for relief under Chapter 11, Sub V of Title 11 of the United States Code.

4. Harrah Land continues to be in possession of its property consisting of 13 substantially completed houses having a value of $215,000 to $240,000 each; 46 residential lots and 16 acres of undeveloped real property.

5. Harrah Land averages the sale of three houses per month with gross sales of about $698,700.

6. It is essential that Harrah Land continue to sell houses in the ordinary course of its business and pay the necessary expenses to sell the houses.

1

EXHIBIT B

7.  Harrah Land requires the immediate authorization to use cash collateral to avoid immediate and irreparable harm to its business and value of its property.

8.  If Harrah Land does not continue sale of its houses and convey marketable title, Harrah Land's business operations will terminate and the value of its property will decrease. Continuing the sale of houses and paying the allowed claims secured by those houses maximizes the value of the property which benefits all creditors of the bankruptcy estate.

9.  Harrah Land's use of cash collateral is reasonable under the circumstances and reflects prudent business judgment in maintaining the bankruptcy estate while continuing to protect the interests of TFCU, Valor Bank and other creditors.

10. The necessary expenses for the next 30 days total $648,715. Harrah Land should have net proceeds of $49,985. The necessary expenses include the Construction Costs which consist primarily the payment of the secured claims with mortgages or liens against the specific house being sold.

11. All of the facts stated in the Motion true and correct to the best of my knowledge and belief.

12. Further Affiant saith not.

_____
T.J. Remy
Managing Member of Harrah Land FC, LLC

Subscribed and sworn to before me this 21st day of May, 2022.

_____
Notary Public

My Commission Expires:

5-24-27

MONA K BURKE
Notary Public, State of Oklahoma
Commission # 23007163
My Commission Expires 05-24-2027

2

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

IN RE: )
)
HARRAH LAND FC, LLC, ) Case No. 24-80401-T
) Chapter 11, Sub V
)
)
Debtor-in-Possession. )

## INTERIM CASH COLLATERAL ORDER

This Court, after review and consideration of the Motion for Emergency Interim Use of Cash Collateral and Request for Expedited Hearing with Brief in Support (the **"Motion"**) filed May 21,

1



2024 [Doc. #__] by Harrah Land FC, LLC, (**"Harrah Land"**), the above-captioned Debtor-in-Possession, and the pleadings on file in this case, finds as follows:

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. Sections 157 and 1334. Venue is proper pursuant to 28 U.S.C. Sections 1408 and 1409. This Motion concerns the administration of Park 151's bankruptcy estate is a core proceeding under 28 U.S.C. Sections 157(b)(2)(A) and (M).

2. Sufficient and adequate notice of the Motion has been provided to all creditors and other parties in interest.

3. Harrah Land filed its voluntary petition for relief under Chapter 11, Sub V of Title 11 of the United States Code on May 21, 2024; and since such date has continued in possession of its property and operation of its business as Debtor-in-Possession under 11 U.S.C. Sections 1107 and 1108.

4. An immediate and critical need exists for Harrah Land to use the proceeds from the sale of houses in the ordinary course of its business.

5. Harrah Land owns 13 houses in Seminole County, Oklahoma which are substantially completed. Of these 13 houses, TFCU has separate mortgages on 10 and Valor Bank has separate mortgages on three.

6. Three creditors have filed liens against the 13 houses:

    a. Pioneer Supply has filed a lien for $300,000, but this lien is also secured by other property owned by Harrah Land. The amount of Pioneer's lien per house is estimated at $9,500.

    b. MillCreek Lumber has filed a lien for $80,000. MillCreek Lumber's lien ranges from $2,000 to $5,000 per house.

2

c. Rempel Rock-N-Ready Mix (**"Rempel"**) has filed a lien for $200,000. Harrah Land disputes the validity of this lien because the obligation is not owed by Harrah Land, and the lien also is secured by property owned by a third party.

7. The ability of Harrah Land to use cash collateral is necessary to preserve and maintain the going concern value of the bankruptcy estate.

8. As adequate protection, Harrah Land shall satisfy the specific mortgage amounts owed to TFCU and Valor Bank on each house sold; and Harrah Land shall satisfy the lien claims of Pioneer Supply and MillCreek Lumber on each house sold. The lien of Rempel is disputed and its lien shall attached to the sale proceeds to be disbursed by further order of this Court.

9. It is in the best interests of the bankruptcy estate, its creditors and parties in interest to grant the Motion as it will allow for the continued operation and preservation of the going concern value of Harrah Land. Good cause has been shown for the entry of this Order.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Motion is granted on an interim basis for 30 days.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Harrah Land is authorized to use the proceeds from the sale of houses in accordance with the budget attached as **Exhibit "A"**.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Harrah Land is permitted a variance of fifteen percent (15%) as to the whole budget.

*Movant is responsible for giving notice of this Order to all parties in interest.*

###

*Submitted by:*

RIGGS, ABNEY, NEAL, TURPEN,
ORBISON & LEWIS

*S/Scott P. Kirtley*
Scott P. Kirtley, OBA # 11388
502 West 6th Street
Tulsa, Oklahoma 74119
(918) 587-3161
(918) 587-9708 (fax)
skirtley@riggsabney.com

*Attorneys for Harrah Land FC, LLC*